UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BR NORTH 223, LLC,

       Plaintiff,                            No. 13-50297

v.                                         District Judge Paul D. Borman
                                                  Magistrate Judge R. Steven Whalen

BERNARD GLIEBERMAN, ET AL.,

       Defendants.
_____/

**OPINION AND ORDER**

      Before the Court is Plaintiff BR North 223, LLC's Motion to Seize and Transfer all Shares of Certain Stock Held by Debtor in Aid of Collection of Judgment [Doc. #151], which has been referred for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons discussed below, the motion is GRANTED.

**I.   FACTS**

      Bernard Glieberman ("Bernard") was a long-time real estate developer. Over the years he had a direct or indirect ownership interest in over 100 entities. Following the collapse of the real estate and financial markets in 2007 and 2008, Mr. Glieberman defaulted on numerous loans, resulting in over $200,000,000 in judgments against him. One of the judgment creditors is the Plaintiff in this case, BR North 223, LLC, which has a default judgment from the Eastern District of California for $81,170,331.74 against Mr. Glieberman and the Glieberman Revocable Living Trust ("the Trust"). That judgment was registered in the Eastern District of Michigan on February 26, 2013, and is the subject of these ongoing supplementary proceedings.

      The property at issue in the present motion is a corporation known as Digim, Inc.

("Digim"), or more precisely the shares of Digim stock. Plaintiff contends that Glieberman or the Trust owns these shares, and that under Michigan law, it is entitled to seizure and transfer of that stock from these Defendants. Glieberman, on the other hand, maintains that neither he nor the Trust owns the Digim shares, but that those shares were transferred to Lontray, LLC ("Lontray"), an LLC 98% owned by his children, Lonie Glieberman ("Lonie") and Tracey Katzen. Glieberman claims that the transfer was effectuated as the result of the execution of a previous stock pledge agreement and an "operating agreement" that gave Lontray 100% ownership of Digim. The Court held an evidentiary hearing in order to determine the ownership status of the Digim stock, which, in the context of this motion, is critical to the issue of whether it can be seized from Glieberman or the Trust.

Prior to the hearing, the parties filed a Joint Statement of Stipulated and Contested Facts ("Joint Statement") [Doc. #162]. Bernard Glieberman testified at the hearing. (The transcript of the hearing is found at Doc. #168). Bernard's testimony, along with the uncontested facts, reveal the following transactions. Bernard was always the trustee of the Trust, and even before the trust was created, he owned 100% of Digital Image, Inc. (Joint Statement, ¶ 4; Tr. 22). During the time frame in question in this case, he owned Digital Image, Inc. individually (Tr. 62).

As trustee of the Trust, Bernard created Tay Land, LLC in 2004. Bernard, as trustee, owned 99% of Tay Land, and Sandra Glieberman, his wife, owned 1%. (Joint Statement, ¶¶ 5-6; Tr. 26).

Bernard organized Lontray in 1999. Bernard and his wife each have a 1% ownership in Lontray, and Lonie Glieberman and Tracey Katzen, their children, each have a 49% ownership. At some point in 2005, Bernard transferred his 1% interest in

Lontray to the Trust (Joint Statement, ¶¶ 9-11; Tr. 24). Bernard is the manager of Lontray (Joint Statement, ¶ 12; Tr. 26).

Either Bernard or the Trust was also the sole shareholder of TRL1, LLC. The name of TRL1, LLC was changed to Digital Image, LLC (Joint Statement, ¶¶ 36-37; Tr. 34).

In 2006, when the mortgage market "went haywire," Lontray gave Bernard a $5 million line of credit, secured by property in Merced, California (Tr. 46-48). In 2007, one Sam Sobel loaned Bernard $2 million. Bernard defaulted, and Sobel obtained a judgment. Bernard testified that in order to settle with Sobel, he convinced Lonie to subordinate his interest in the Merced property to Sobol, in exchange for a pledge of the Digital Image, Inc. stock to Lontray. Lontray also provided an additional $5 million dollar line of credit to Bernard (Tr. 47-53).

Bernard identified the stock pledge agreement as Exhibit 17. He was unsure exactly when the agreement was executed, but believed it was in June, 2008. The agreement itself is undated. Bernard signed the agreement on behalf of Tayland (the borrower) as manager and shareholder, and also on behalf of Lontray (the lender) as manager. The last page of the agreement (Exhibit 17), denoted as an "assignment separate from security," and signed by Bernard, is also undated, and does not indicate the assignee (Tr. 29). Bernard testified that the assignment separate from security was not dated because his lawyers told him that document would not be executed until the stock was turned over (Tr. 45).

Bernard testified that "in his mind," when he transferred Digital Image, LLC to Lontray, he also transferred the stock and assets of Digim to Lontray. This belief was premised on the theory that Bernard had previously transferred Digim to Digital Image, LLC, and on the operating agreement for Digim (Tr. 61; Exhibits 25, 29). It was also

premised on an Assignment Separate from Certificate (Exhibit 26), which Bernard stated that he executed to transfer the Digim stock to Digim, LLC. However, Bernard signed it as trustee of the Trust, although he alone owned Digital Image, Inc. and Digim individually (Tr. 62). Bernard testified that this was a "mistake." *Id*.

Bernard testified to the following series of transactions in 2008. On October 29, 2008, he signed a "consent of shareholder" document that approved changing the name of Digital Image, Inc. to Digim, Inc. The document states that Bernard was the sole shareholder (Tr. 32; Exhibit 23). An endorsement reflecting the name change was later filed with the State of Michigan reflecting the name change to Digim, Inc., and indicating that Bernard was the sole shareholder (Tr. 32-33). On December 31, 2008, Bernard signed, as trustee of the Trust, an "assignment separate from certificate" that assigned all shares of Digim to Digital Image, LLC (Tr. 36-37, Exhibit 26). Sometime after December 31, 2008, Bernard prepared a Certificate of Dissolution for Digim, but did not file it at that time. Bernard testified that this was a "mistake" (Tr. 65). The Certificate was not dated (Tr. 38-39).

Between 2009 and 2014, Bernard filed annual reports for Digim with the State of Michigan. In the reports for 2009, 2011, and 2014, Bernard signed as "owner." In the reports for 2012 and 2013, he signed as "president." (Tr. 40; Exhibit 32). Despite having signed the reports in this manner, Bernard testified that he was neither president or owner of Digim from 2009 to 2014. He claimed that the annual reports were among 20 or 25 documents that were put in front of him, and he did not pay any attention (Tr. 66-67).

Lonie Glieberman testified that in 2008, Bernard defaulted on a $5 Million loan from Lontray (Tr. 80). He and his sister, Tracey Katzen, who each had a 49% interest in Lontray, decided to collect on their "collateral," which was Digital Image, Inc. (Tr. 81).

Lonie testified that Lontray acquired Digital Image, Inc., and has had an ownership in that company since January 1, 2009 (Tr. 82). Lonie did not offer any testimony regarding Digim.

On June 11, 2014, Bernard filed, or caused to be filed, a Certificate of Dissolution for Digim with the State of Michigan (Tr. 42-43).

## II.   LEGAL PRINCIPLES

Fed.R.Civ.P. 69(a)(1) provides that a "money judgment is enforced by a writ of execution, unless the court directs otherwise." The Rule further provides that the procedure on execution "must accord with the procedure of the state where the court is located...." M.C.L. § 600.6104 sets forth the following procedure:

> "After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;
>
> (2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;
>
> (3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;
>
> (4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and
>
> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor."

## III.   DISCUSSION

If Bernard Glieberman or the Trust owns the shares of Digim stock, the Court may order the transfer of those shares to the Plaintiff judgment creditor under M.C.L. §

600.6104(3) and (5). If, as Bernard contends, Lontray owns the Digim shares, transfer under § 600.6104 is the wrong vehicle for Plaintiff to obtain them.[1] The question, then, is whether Bernard legally transferred Digim to Digital Image, LLC, and then Digital Image, LLC to Lontray.

Bernard's testimony, along with the exhibits, establishes that he, not the Trust, owned Digital Image, Inc. in 2008 (Tr. 22, 62; Joint Statement, ¶ 4). Bernard, not the Trust, was the sole shareholder of Digital Image, Inc. (Tr. 32-33; Exhibit 23). When Bernard filed the endorsement reflecting the name change from Digital Image, Inc. to Digim, Inc., he signed as the sole shareholder. *Id*. Yet when he executed the "assignment separate from certificate" in December of 2008, purportedly to assign Digim to Digital Image, LLC, he signed as trustee, on behalf of the Trust (Tr. 36-37; Exhibit 26). Again, however, the Trust did not own Digim. While Bernard testified that this was a "mistake," it brings into question the validity of a transfer by an entity that did not have any ownership interest.

According to Bernard, he prepared an undated Certificate of Dissolution of Digim sometime after December 31, 2008. He stated that his failure to file it with the State of Michigan was a "mistake." However, he did file a Certificate of Dissolution during the pendency of these proceedings. In addition, the assignment separate from security attached to the stock pledge agreement (Exhibit 17) is undated, and does not indicate the assignee. Bernard testified that this was because his lawyers told him that document would not be executed until the stock was turned over (Tr. 45). The document is still

---

[1] Plaintiff has commenced a separate proceeding with respect to Digim against Bernard, the Trust, Lontray, Lonie, Tracey Katzen, and others under the Michigan Uniform Fraudulent Transfer Act ("MUFTA"), M.C.L.A. § 566.31, *et seq*. *See* E.D. Mich. Docket No. 14-14488.

unsigned.

There is additional evidence that Bernard never legally transferred Digim to Digital Image, LLC, Lontray, or anyone else. Annual reports filed between 2009 and 2014 identify Bernard as the "owner." His testimony that this was yet another "mistake," and that he signed these reports without reading them is of questionable credibility. Bernard is an experienced and sophisticated business person, and took the lead in setting up, structuring, and juggling the various corporate entities that made up the Gliebermans' holdings.

Based on the testimony and exhibits, I find that Bernard, not the Trust, was always the owner of Digital Image, Inc. and Digim, and that his ownership continued through 2014, when he caused the Certificate of Dissolution to be filed. At no time did Bernard legally transfer any shares of Digim to Digital Image, LLC, or to anyone else. Digital Image, LLC, never had a valid ownership interest in Digim. Thus, even assuming the validity of the transfer of Digital Image, LLC to Lontray, that transfer did not include Digim. Therefore, Plaintiff may execute on the shares of Digim under M.C.L. § 600.6104(3) and (5).

## IV.   CONCLUSION

Plaintiff's Motion to Seize and Transfer all Shares of Certain Stock Held by Debtor in Aid of Collection of Judgment [Doc. #151] is GRANTED. Defendant Bernard Glieberman will transfer all shares of stock in Digim, Inc. to Plaintiff within 14 days of the date of this Order.

IT IS SO ORDERED.

/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 11, 2015

Certificate of Service

I certify that a copy of this document was served upon parties of record on September 11, 2015 via electronic or postal mail.

/s/C. Ciesla
CASE MANAGER