UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BR NORTH 223, LLC,

      Plaintiff,                                     No. 13-50297

v.                                              District Judge Paul D. Borman
                                                  Magistrate Judge R. Steven Whalen

BERNARD GLIEBERMAN, ET AL.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Before the Court is Plaintiff BR North223, LLC's motion to compel Defendant Bernard Glieberman, individually and as Trustee of the Bernard Glieberman Revocable Living Trust, and Ellias & Elias, P.C. to release certain legal files [Doc. #139].[1] Because this is a post-judgment matter, I will proceed by Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(b).[2] For the reasons discussed below, I recommend that the motion

---

[1] Plaintiff has also filed what is labeled a supplemental motion with regard to the legal files in question [Doc. #178]. It is more accurately described as a supplemental brief.

[2] Judgment on the underlying claim in this case has already been entered. This is therefore a post-judgment, not a pretrial matter, and a Magistrate Judge referred such matters must proceed by Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(b). Section 636(b)(1)(A) provides that a District Judge "may designate a magistrate judge to hear and determine any *pretrial* matter pending before the court...." (Emphasis added). *See Massey v. City of Ferndale*, 7 F.3d 506, 509-10 (6th Cir. 1993), citing *Bennett v. General Caster Serv. of N. Gordon Co.,* 976 F.2d 995, 997 (6th Cir.

be GRANTED.

## I. BACKGROUND

Bernard Glieberman ("Bernard") was a long-time real estate developer. Over the years he had a direct or indirect ownership interest in over 100 entities. Following the collapse of the real estate and financial markets in 2007 and 2008, Mr. Glieberman defaulted on numerous loans, resulting in over $200,000,000 in judgments against him. One of the judgment creditors is the Plaintiff in this case, BR North 223, LLC, which has a default judgment from the Eastern District of California for $81,170,331.74 against Mr. Glieberman and the Glieberman Revocable Living Trust ("the Trust"). That judgment was registered in the Eastern District of Michigan on February 26, 2013, and is the subject of these ongoing supplementary proceedings.

On August 15, 2013, the Court entered an order granting Plaintiff's motion to seize and transfer the Defendants' property to satisfy the underlying judgment [Doc. #115]. In its motion [Doc. #104], Plaintiff asked that the Court "direct[] the Trust to transfer all shares of stock in Strathmore Finance Company, Inc., Tralon Corp., and Renegades Management, Inc. to Judgment Creditor immediately, along with all rights of ownership." Based on M.C.L. § 600.6104, the Court granted the turnover motion in its entirety.

Prior to the turnover order, the law firm Ellias & Elias, P.C. (the "Ellias firm") represented Strathmore Finance Company, Inc., Tralon Corp., and Renegades

---

1992).

Management, Inc. ("the Companies"). (The Ellias firm also represents the Defendant Judgment Debtors in this case). In its response to Plaintiff's motion to seize property, Defendants noted that the Ellias firm had "hundreds of files spanning over 14 years" regarding the Companies [Doc. #128, 4-5]. Defendants do not dispute that the Companies were clients of the Ellias firm. *See* Defendants' response [Doc. #144], at 11.

Plaintiff contends that by virtue of the turnover order, it now is a 100% owner of the Companies, that it therefore owns the attorney-client privilege as to the Companies, and that the Ellias firm must produce all legal files relating to the Companies.[3]

Defendants contend that the turnover order did not contemplate the release of privileged legal files, and that the transfer of the Companies' stock to Plaintiff did not include a transfer of the attorney-client privilege.

## II. DISCUSSION

The lead Supreme Court case dealing with the status of a corporation's attorney-client privilege when control of the corporation is transferred is *Commodity Futures*

---

[3] The original turnover order [Doc. #115] transferred all of the Companies' stock to Plaintiff. On December 10, 2013, I entered an order granting Defendants additional time to comply [Doc. # 132]. In that order, I stated, "To the extent that there remain any stock certificates, files or documents that have not been produced...Defendants will produce those stock certificates, files and/or documents within seven days of the date of this Order." The parties disagree as to whether the "files" or "documents" referenced in this Order include the legal files. Defendants filed a motion for clarification of this Order [Doc. #137]. That motion was initially referred to the undersigned Magistrate Judge on January 10, 2014 [Doc. #140], but the referral was vacated by text order the same day. The motion for clarification is still pending.

*Trading Com'n v. Weintraub*, 471 U.S. 343 (1985). The specific question in *Weintraub* was "whether the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy." *Id*, at 346. Finding that the "trustee plays the role most closely analogous to that of a solvent corporation's management," the Court stated, "Given that the debtor's directors retain virtually no management powers, they should not exercise the traditional management function of controlling the corporation's attorney-client privilege...." The Court stated the general rule as follows:

> "[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."
> *Id*. at 349.

The Defendants, arguing for a narrow application of *Weintraub*, rely on *Federal Deposit Ins. Corp. v. Amundson*, 682 F.Supp. 981 (D. Minn. 1988) and *Tekni-Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123 , 651 N.Y.S.2d 954 (1996).

In *Amundson*, the F.D.I.C., in its corporate capacity, was the "purchaser of certain assets" of a bank. *Id*., 682 F.Supp. at 983. The Comptroller of the Currency of the United States ("COC") had determined the bank to be insolvent, and closed it pursuant to the National Bank Act, 12 U.S.C. § 21, *et seq*. The F.D.I.C. was appointed receiver, and sold

certain assets, including the bank's causes of action, to the F.D.I.C. in its corporate capacity.[4] *Amundson* distinguished *Weintraub* on the basis that in *Weintraub,* "[t]he bankruptcy trustee maintains the pre-existing entity, managing its affairs. The prior management is supplanted and efforts are made to run the existing business entity in a prudent fashion or to systematically wind it down and fairly distribute its assets," whereas in *Amundson*, the F.D.I.C. was merely a "liquidator":

> "A disaster has hit an insured building. The insurance company (the FDIC as receiver) has paid on its policy and sells the disaster site—lock, stock, and barrel—to a liquidator (the FDIC in its corporate capacity). There is no thought or effort to reconstitute the entity or to run it at all. There is only an effort to sift the ashes, selling off what is valuable or collecting on its receivables. This case is part of an effort to collect its receivables." 682 F.Supp. At 987.

In *Tekni-Plex*, the court held that "[w]hen ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction." *Id*., 89 N.Y.2d at 133. The court construed *Weintraub* as "establish[ing] that, where efforts are made to run the pre-existing business entity and manage its affairs, successor

---

[4] In *F.D.I.C. v. Rahn*, 116 F.3d 1142, 1145 (6th Cir. 1997), the Court explained the distinction between the F.D.I.C.'s dual capacities as follows:

> "In a typical purchase and assumption transaction, the FDIC acts in two distinct capacities. On one hand, the FDIC acts as receiver of a failed bank, marshalling its assets in order to pay the bank's creditors. On the other hand, the FDIC-Corp. acts as an insurer of member banks. In its corporate capacity, the FDIC must make the most of the assets purchased from the FDIC as receiver."

management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations. It follows that, under such circumstances, the prior attorney-client relationship continues with the newly formed entity." *Id*. However, citing *Amundson*, the court held that " the mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship." *Id*.

Neither *Amundson* nor *Tekni-Plex* is binding on this Court, and both have been criticized. The court in *In re I Successor Corp*., 321 B.R. 640, 653 (S.D.N.Y. 2005), held that *Amundson* "conflict[s] with the Supreme Court's ruling in *Weintraub*." The court explained as follows:

> "The District of Minnesota held in *Federal Deposit Ins. Corp. v. Amundson* that the FDIC, which had purchased the assets of a bank and was appointed receiver for the purpose of liquidation, could not exercise the attorney-client privilege of the entity from which it purchased assets because, purportedly unlike in *Weintraub*, '[t]here is no thought or effort to reconstitute the entity or to run it at all.' *Id.* at 987. This conclusion by the *Amundson* court fails to take into account the fact that the Supreme Court in *Weintraub* was also addressing a situation where there was no thought to reconstitute the company, since *Weintraub* involved a Chapter 7 liquidation." *Id*., 652-653.

*See also U.S.S.E.C. v. Bravata*, 2011 WL 606745, *2 (E.D.Mich. 2011)(citing *Weintraub* in support of holding that a court-appointed receiver has the right to waive the attorney-client privilege).

To the extent that *Amundson* and *Tekni-Plex* purport to set forth a broad exception to *Weintraub* where a successor owner who does not reconstitute or actively manage a

functioning company does not have the ability to waive the attorney-client privilege on behalf of the entity, I agree with *In re I Successor Corp* that those cases in fact conflict with *Weintraub*. And to the extent that *Amundson* describes a narrower exception to *Weintraub*, it is distinguishable from the present case.

In *Amundson*, the F.D.I.C. in its corporate capacity merely purchased "certain assets" of a bank, including physical assets and receivables, from the F.D.I.C. in its capacity as a receiver. At the time of the sale, the bank had been closed under the National Bank Act. F.D.I.C.-corporate was not a shareholder or owner of the bank in any event, and did not have corporate decision-making authority with regard to the bank itself. In the present case, whether or not the Companies were actively engaged in business before the transfer order was entered, they were not legally dissolved.[5] Moreover, the transfer of all of the shares of stock makes the Plaintiff the sole shareholder of the Companies, giving it decision-making control. The Plaintiff has the right to actively operate the Companies, or to dissolve them. *Weintraub* held that "[n]ew managers installed as a result of a *takeover*... may waive the attorney-client privilege with respect to

---

[5] In response to the Defendants' numerous claims that the Companies are "defunct" or "dead," Plaintiff argues that the privilege died with the Companies. *See eg. City of Rialto v. Dept. of Defense*, 492 F.Supp.2d 1193 (C.D. Cal. 2007)(dissolved corporation not entitled to assert attorney-client privilege). Given that Plaintiff is entitled to assert or waive the privilege under *Weintraub*, by virtue of its status as sole shareholder, it is not necessary to reach that question. I note, however, that unlike the corporation in *City of Rialto*, the Companies have not been legally dissolved. Thus, while they may be on life-support, they are not completely dead.

communications made by former officers and directors." 471 U.S. at 349 (emphasis added). The turnover order was the functional equivalent of a takeover, and it gave Plaintiff complete control of the Companies. This fits squarely within the holding of *Weintraub*. The Defendant judgment debtors, on the other hand, have zero control. "Given that the debtor's directors retain virtually no management powers, they should not exercise the traditional management function of controlling the corporation's attorney-client privilege." *Id.* at 353. *See also Bravata*, 2011 WL at *2 ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties").

     In addition, it its supplemental pleading [Doc. #178], Plaintiff states that it has received a communication advising of potential litigation against Creative Land Design, Inc., a wholly-owned subsidiary of Strathmore Finance Company, Inc., one of the Companies. As the sole shareholder of the Companies and any of their subsidiaries, the Plaintiff has complete decision-making power with regard to litigation or pre-litigation strategy. It cannot make sound decisions without the Companies' complete legal files, and given the conflict of interest, it cannot be expected to rely on the Ellias firm, which represents the Defendants in this case, to pick and choose which files it will release in response to particular litigation.

     *Weintraub* is the controlling authority, and Defendants and the Ellias firm should

be required to turn over all legal files relating to the Companies.

### III. CONCLUSION

For these reasons, I recommend that Plaintiff's motion to compel Defendant Bernard Glieberman, individually and as Trustee of the Bernard Glieberman Revocable Living Trust, and Ellias & Ellias, P.C. to release certain legal files [Doc. #139] be GRANTED, and that the Defendants and Ellias & Ellias, P.C. be ordered to turn over to Plaintiff all legal files relating to Strathmore Finance Company, Inc., Tralon Corp., and Renegades Management, Inc., and any of their wholly-owned subsidiaries. I further recommend that Plaintiff be required to pay the reasonable costs of reproducing these documents.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served

upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: November 24, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 24, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen