UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BR NORTH 223, LLC,

        Plaintiff,

Case No. 13-mc-50297

Paul D. Borman
United States District Judge

v.

BERNARD GLIEBERMAN, ET AL.,

R. Steven Whalen
United States Magistrate Judge

        Defendants.

_____/

## OPINION AND ORDER (1) DENYING BR NORTH 223, LLC'S OBJECTIONS (ECF NO. 345); (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF NO. 340); (3) GRANTING BR NORTH 223'S EMERGENCY MOTION TO SEIZE AND TRANSFER ALL SHARES OF CERTAIN STOCK HELD BY DEBTOR IN AID OF COLLECTION ON THE JUDGMENT (ECF NO. 151); AND (4) ORDERING BERNARD GLIEBERMAN TO TURN OVER ALL SHARES OF STOCK IN DIGIM, INC. TO BR NORTH 223

Now before the Court is Magistrate Judge Whalen's September 18, 2015 Report and

Recommendation which recommends that this Court grant Judgment Creditor, BR North 223,

LLC's ("BR North") Emergency Motion to Seize and Transfer all Shares of Certain Stock Held

by Debtor in Aid of Collection on the Judgment. (ECF No. 340, Report and Recommendation.)

BR North filed an objection to the Report and Recommendation on October 5, 2015 (ECF No.

345.) Judgment Debtors, Bernard Glieberman individually and as Trustee for the Bernard

Glieberman Revocable Trust, ("Judgment Debtors") filed an objection on the same date. (ECF

No. 344.) BR North and Judgment Debtors both filed responses to the other party's objections.

(ECF Nos. 346, 347.) On November 2, 2015, the date that BR North filed a timely reply,

Bernard Glieberman filed a "Notice of Petition in Bankruptcy" and advised the Court that "the

above proceedings are STAYED until further order of the Bankruptcy Court."[1]  (ECF No. 350; Bankr. Case no. 15-55996, McIvor, J.)

On January 19, 2016, the Bankruptcy Court entered an "Order Granting Relief from Automatic Stay Solely to Permit Federal Court to Enter its Determination Regarding Report and Recommendation (Dkt. #340)."  (ECF No. 355, Ex. 1.)

On January 29, 2016, Glieberman filed a "Notice of Withdrawal of Defendants' Objections to Magistrate Judge's Report and Recommendation" and "Notice of Withdrawal of Defendants' Response to Judgment Creditor's Objection to Report and Recommendation."  (ECF Nos. 358, 359.)

The Court notes that on January 28, 2016, Lontray Enterprises, LLC filed a pending motion for "Enforcement of Mandatory Joinder Provisions of Michigan Trying Title Statute (MCL § 600.6128) pursuant to Binding Sixth Circuit Precedent."  (ECF No. 357.)  Then on February 3, 2016, Lontray filed a "Notice of Joinder/Concurrence" in the Objection and Response that were withdrawn from the docket some four days prior by Glieberman.  The Court does not address the Judgment Debtor's Objection and Response as they became inoperative when they were withdrawn on January 29, 2016 – prior to any joinder by Lontray.

The Court now addresses BR North's objection to the Report and Recommendation, which is the sole remaining objection.  (ECF No. 345.)  This Court reviews *de novo* the portions

---

[1] On November 24, 2015, Magistrate Judge Whalen issued a second Report and Recommendation recommending that this Court grant BR North's motion to compel the release of certain legal files.  (ECF No. 352.)  Thereafter, the parties stipulated to multiple extensions of time to file objections to that Report and Recommendation.  More recently, the parties filed notice on October 12, 2016 that they had entered into an agreement and settled their issues in regards to the Motion to Compel.  (ECF No. 390.)

of a report and recommendation to which objections have been filed.  28 U .S.C. § 636(b)(1);

FED. R. CIV. P. 72(b).  Having conducted a *de novo* review of the parts of the Magistrate Judge's

Report and Recommendation to which valid objections have been filed pursuant to 28 U.S.C. §

636(b)(1), the Court will deny the BR North's objections and adopt the Magistrate Judge's

Report and Recommendation.

## I. BACKGROUND

BR North originally filed suit against Bernard Glieberman, both individually and as

trustee for the Bernard Glieberman Revocable Trust dated June 8, 2001 as amended, in the

United States District Court for the Eastern District of California.  On March 26, 2012, United

States District Judge Lawrence J. O'Neill of that District granted BR North's Motion for Default

Judgment in that case, ordering judgment in favor of BR North and against then Defendants

Glieberman and his Trust in the amount of $81,170,331.74.  Thereafter, BR North (now a

judgment creditor) filed a certification of the default judgment order in this Court on February

26, 2013 against Defendants (now judgment debtors).  (ECF No. 1.)

On August 15, 2013, the Court granted BR North's Emergency Motion to Seize and

Transfer Property of Debtor to Satisfy Judgment, and required Judgment Debtors to transfer all

the stock of Strathmore Finance Company, Inc., Tralon Corp., and Renegades Management to

BR North to satisfy the March 26, 2012 default judgment.  (ECF No. 115, Order.)

On March 3, 2014, BR North filed a "Judgment Creditor's Emergency Motion to Seize

and Transfer All Shares of Certain Stock Held by Debtor in Aid of Collection on the Judgment."

(ECF No. 151.)  In its motion to seize, BR North requested that the Court order Bernard

Glieberman ("Glieberman") to turn over certain property to satisfy its judgment, specifically his

shares of stock in Digim, Inc. (*Id.*) BR North represented that files produced by the Judgment

Debtors indicated that Glieberman was the owner and president of Digim, Inc. but that

Glieberman's counsel refused to turn over the stock and claimed that Glieberman had not been a

shareholder of that company since 2008. (*Id.* at *1-2.) The matter was referred to Magistrate

Judge Whalen who held an initial hearing on the matter on March 25, 2014. (ECF No. 157,

3/25/14 Hrg. Tr.) After hearing from the parties, Magistrate Judge Whalen ordered an

evidentiary hearing on the ownership status of the Digim stock which was held on August 5,

2014. (ECF No. 156.)

At the August 5, 2014 evidentiary hearing, Magistrate Judge Whalen recognized that

"The issue in this case is narrow and it has to do with the ownership, I guess, status of Digim,

Inc." (ECF No. 168, 8/5/14 Hrg. Tr., at 9.) BR North's counsel similarly stated that the "sole

question" before the court was "the ownership of the shares or share of stock of Digital Image,

Inc. that's what it's formerly known as and Digim, Inc. and whether or not those shares of stock

were later transferred away to different entities." (*Id.*, at 10.) BR North then explained its

theory of the case: Bernard Glieberman "never successfully transferred those shares of stock to

an entity known as Digital Image, LLC" and the ownership of Digital Image, Inc., later renamed

Digim, Inc. was always in Bernard Glieberman's name. (*Id.*, at 11.)

      A.     Facts regarding Digim Stock Ownership

It is undisputed that Glieberman owned 100% of the shares of Digital Image, Inc. prior to

the creation of the Trust in 2001. (ECF No. 162, Joint Statement, at ¶4.)

On October 1, 2008 Tay Land, LLC was created by Glieberman, as trustee of the Trust.

(*Id.* at ¶ 5.) Glieberman, as trustee, owned 99% of Tay Land and Sandra Glieberman (his wife)

owned 1%.  (*Id.* at ¶¶ 5-6.)

In 1999, Glieberman organized Lontray Enterprises, LLC.  At that time, Glieberman and

his wife each owned a 1% member interest and their son, Lonie Glieberman, and their daughter,

Tracy Katzen, each owned a 49% membership interest.  At some point in 2005, Glieberman

transferred his 1% share of Lontray to the Trust.  (*Id.* at ¶¶ 9-11.)  At all relevant times,

Glieberman was the manager of Lontray.  (*Id.* at ¶12.)  Glieberman also had complete financial

discretion and freedom to advance funds on behalf of Lontray.  (8/5/14 Hrg. Ex. Ex. 45, Lonie

Glieberman Dep. at 28.)

> Magistrate Judge Whalen summarized the following transactions:
>
> In 2006, when the mortgage market "went haywire," Lontray gave Bernard a $5 million line of credit, secured by property in Merced, California (Tr. 46-48).  In 2007, one Sam Sobel loaned Bernard $2 million.  Bernard defaulted, and Sobel obtained a judgment.  Bernard testified that in order to settle with Sobel, he convinced Lonie to subordinate his interest in the Merced property to Sobol, in exchange for a pledge of the Digital Image, Inc. stock to Lontray.  Lontray also provided an additional $5 million dollar line of credit to Bernard.  (Tr. 47-53.)
>
> Bernard identified the stock pledge agreement as Exhibit 17.  He was unsure exactly when the agreement was executed, but believed it was in June, 2008.  The agreement itself is undated.  Bernard signed the agreement on behalf of Tay Land (the borrower) as manager and shareholder, and also on behalf of Lontray (the lender) as manager [and as "Shareholder" of Digital Image, Inc., *see* Joint Statement at ¶29].  The last page of the agreement ([Hrg.] Exhibit 17), denoted as an "assignment separate from security," and signed by Bernard, is also undated, and does not indicate the assignee (Tr. 29).  Bernard testified that the assignment separate from security was not dated because his lawyers told him that document would not be executed until the stock was turned over (Tr. 45).

(Report and Recommendation, at *3, citing to 8/5/14 Hrg. Tr.)

In December 2008 a number of transactions occurred.  First, on December 26, 2008,

Lonie Glieberman sent an email to his father, Glieberman and attorney Frank Elias (the Pledge

Holder pursuant to the Stock Pledge Agreement and the Judgment Debtors' attorney) that stated that Tay Land was in default under its Line of Credit and demanded payment within ten days or "Lontray will execute on the pledge of your stock for digital image and require thatr (sic) title to the stock be transferred to Lontray LLC." (8/5/14 Hrg. Ex. 22, Email.)

Judgment Debtors asserted that because Lontray was a limited liability company that could not be a shareholder in an S corporation certain actions needed to be taken to execute on the Stock pledge.  In no short order, on December 29, 2008, a mere three days after the email asserting that a default had occurred (and with no apparent email providing a response or defense to the alleged default), Glieberman, as "trustee, Shareholder," changed the name of Digital Image, Inc. to Digim, Inc.  (Joint Statement, at ¶ 35; 8/5/14 Hrg. Ex. 23, Cert. of Amendment.) Also on December 29, 2008, Glieberman, as "manager" of TRL1, LLC, executed the "Resolution of the Sole Manager of TRL1, LLC," resolving to change the name of TRL1, LLC to Digital Image, LLC (to be distinguished from Digital Image, Inc. whose name had been changed to Digim, Inc.).[2] (Joint Statement, at ¶ 37; 8/5/14 Hrg. Ex. 25, "Restated Art. of Org. for Digital Image, LLC.")

On December 31, 2008, Glieberman, as trustee of the Trust, executed the "Assignment Separate from Certificate" which purported to assign and transfer all the shares of the capital stock of Digim, Inc. to Digital Image, LLC.  (Joint Statement, at ¶ 39; 8/5/14 Hrg. Tr. 25.)  The Assignment Separate from Certificate also stated that Glieberman, as trustee of the Trust, "has full power and authority to enter into this transaction."  (8/5/14 Hrg. Tr. 25.)  It is undisputed,

---

[2] Either Glieberman or the Trust was the sole shareholder of TRL1, LLC.  (Joint Statement ¶¶ 36-37, 8/5/14 Hrg Tr. 34.)

6

however, that the Trust did not own the Digim stock – Glieberman, as an individual, was the owner of that stock.

On December 31, 2008, Glieberman as "Manager Shareholder," executed the "Written Consent of the Sole Shareholder of Digim, Inc." that provided that Digital Image, LLC resolved that Digim, Inc. "shall be dissolved and that the corporate officers were authorized to execute any documents necessary to effectuate such dissolution and to file in the office of the Michigan Department of Energy, Labor & Economic Growth of Commercial Services the proper certificate setting forth such dissolution." (Joint Statement, at ¶ 41; 8/5/14 Hrg. Ex. 27.)

At some point in time, Glieberman executed an undated "Certificate of Dissolution" for Digim that was never filed with the Michigan Department of Labor & Economic Growth Bureau of Commercial Services. (Joint Statement at ¶ 42, Ex. 28.)  Also on December 31, 2008, Glieberman, as "Manager" of Digital Image, LLC, and as "Manager" of Lontray, executed the "Digital Image, LLC Operating Agreement." (Joint Statement 43, 8/5/14 Hrg. Ex. 28.)  The Digital Image, LLC Operating Agreement stated that Lontray Enterprises, LLC was its "sole member" and appointed Glieberman as the vice-president, treasurer, and secretary. (8/5/14 Hrg. Ex. 28.)

Despite asserting that Digim was dissolved, Glieberman executed the yearly "Department of Energy, Labor & Economic Growth Profit Corporation Information Update" on behalf of Digim alternately listing himself as the "owner" or "president" of Digim in 2009, 2010, 2011, 2013, and 2014.[3] (Joint Statement, at ¶¶ 44-49.)

---

[3] The Court notes that Glieberman executed this update as "owner" of Digim most recently on April 30, 2014 *after* BR North filed its Motion to Seize.

7

> Bernard testified that "in his mind," when he transferred Digital Image, LLC to
> Lontray, he also transferred the stock and assets of Digim to Lontray. This belief was
> premised on the theory that Bernard had previously transferred Digim to Digital
> Image, LLC, and on the operating agreement for Digim (Tr. 61; Exhibits 25, 29). It
> was also premised on an Assignment Separate from Certificate (Exhibit 26), which
> Bernard stated that he executed to transfer the Digim stock to [Digital Image,] LLC.[4]
> However, Bernard signed it as trustee of the Trust, although he alone owned Digital
> Image, Inc. and Digim individually. (Tr. 62). Bernard testified that this was a
> "mistake." *Id.*

(Report and Recommendation, at *3.)

Lonie Glieberman testified that Lontray acquired Digital Image, Inc. and had an

ownership interest in that company since January 1, 2009 but did not offer any testimony

regarding Digim. (8/5/14 Hrg. Tr. 82.)

On June 11, 2014, after BR North filed its motion to seize and after Magistrate Judge

Whalen had scheduled an evidentiary hearing on the ownership of the Digim stock, Glieberman

filed the Certificate of Dissolution of Digim, Inc. with the State of Michigan Department of

Licensing and Regulatory Affairs. (Joint Statement, at ¶ 50.)

B.      Report and Recommendation

On September 18, 2015, after an evidentiary hearing and review of the voluminous

record, Magistrate Judge Whalen issued his Report and Recommendation recommending that

this Court grant BR North's motion to seize certain stock. (ECF No. 340.) Magistrate Judge

Whalen concluded that:

> Based on the testimony and exhibits, I find that Bernard, not the Trust, was always
> the owner of Digital Image, Inc. and Digim, and that his ownership continued
> through 2014, when he caused the Certificate of Dissolution to be filed. At no
> time did Bernard legally transfer any shares of Digim to Digital Image, LLC, or to

---

[4] This appears as "Digim LLC" in the Report and Recommendation. This is a simple
typographical mistake as there was never a Digim LLC.

anyone else.  Digital Image, LLC, never had a valid ownership interest in Digim.
Thus, even assuming the validity of the transfer of Digital Image, LLC to Lontray,
that transfer did not include Digim.  Therefore, Plaintiff may execute on the shares
of Digim under M.C.L. 600.6104(3) and (5).

(Report and Recommendation, at *7.)  Magistrate Judge Whalen recommended that BR North's

motion to seize should be granted and that Glieberman should "transfer all shares of stock in

Digim, Inc. to Plaintiff within 14 days of a final order granting the motion."  (*Id.*)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court

conducts a de novo review of the portions of the Magistrate Judge's Report and

Recommendation to which a party has filed "specific written objections" in a timely manner.

*Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).  Only those objections

that are specific are entitled to a de novo review under the statute.  *Mira v. Marshall*, 806 F.2d

636, 637 (6th Cir.1986).  "The parties have the duty to pinpoint those portions of the magistrate's

report that the district court must specially consider."  *Id.* (internal quotation marks and citation

omitted).

Federal Rule of Civil Procedure 69 "directs district courts to employ the procedures for

executing judgments of the state in which the district court sits."  *Hudson v. Coleman*, 347 F.3d

138, 147 n. 2 (6th Cir. 2003).  Consistent with Federal Rule of Civil Procedure 69, BR North has

been pursuing collection under Michigan's Proceeding for Supplementary Judgment Act

("PSJA"), found at Mich. Comp. Laws § 600.6101., *et seq.*  *See Green v. Ziegelman*, 282 Mich.

App. 292, 297 (Mich. Ct. App. 2009) (discussing these statutes).  Pursuant to Michigan law:

> After judgment for money has been rendered in an action in any
> court of this state, the judge may, on motion in that action or in a

9

subsequent proceeding:

(1)     Compel Discovery of any property or things in action
        belonging to a judgment debtor, and of any property,
        money, or things in action due to him, or held in trust for
        him;

(2)     Prevent the transfer of any property, money, or things in
        action, or the payment or delivery thereof to the judgment
        debtor;

(3)     Order the satisfaction of the judgment out of the property,
        money, or other things in action, liquidated or unliquidated,
        not exempt from execution;

(4)     Appoint a receiver of any property the judgment debtor has
        or may thereafter acquire; and

(5)     Make any order as within his discretion seems appropriate
        in regard to carrying out the full intent and purpose of these
        provisions to subject any nonexempt assets of any judgment
        debtor to the satisfaction of any judgment against the
        judgment debtor.

MICH. COMP. LAWS § 600.6104. "Michigan has given its courts extremely broad authorization to

aid execution on their judgments . . . ." *Rogers v. Webster*, 779 F.2d 52, at *2 (6th Cir. 1985)

(Table Decision). Indeed, "Michigan provides an extensive statutory scheme for enforcement of

judgment. The statutory remedies provided by the PSJA include 'all of the relief a judgment

debtor would ordinarily require.'" *Tattoo Art, Inc. v. TAT Intern.*, LLC, 1:12-mc-33, 2012 WL

6917791, *4 (W.D. Mich. Dec. 12, 2012) (citation omitted, setting forth detailed list of all the

statutory remedies provided under the PSJA), *report and recommendation adopted by*, 2013 WL

235783 (W.D. Mich. Jan. 22, 2013).

III. ANALYSIS

BR North filed an Objection to the Magistrate Judge's Report and Recommendation. (ECF No. 345.) BR North states that it "does not object" to the relief awarded by the Report and Recommendation but to "the scope of the recommended relief and the mechanics of the stock transfer contained the Report and Recommendation." (*Id.* at *1.) BR North requests that the Court modify the Report and Recommendation and declare that the transfer of Digim stock was void *ab inito* and make clear that "this must necessarily include any alleged transfer of assets of DIGIM to Digital Image, LLC." (*Id.* at *7.) BR North also seeks to have this Court "order Digital Image, LLC and Lontray to immediately turn over to the Judgment Creditor any funds that may have been upstreamed from DIGIM to Digital Image, LLC and/or Lontray." (*Id.* at *7-8.) BR North requests that this Court make clear that the dissolution of Digim filed by Glieberman, on behalf of Digital Image, LLC (as the sole shareholder of Digim) should be declared void and "declare all actions by Digital Image, LLC or Lontray as the purported owners of DIGIM as an operating company to have been taken by DIGIM itself." (*Id.*, at *8-9.) Finally, BR North requests that the Court appoint a receiver over the Digim stock pending the transfer of the shares.

Pursuant to 28 U.S.C. § 636(b), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." The Court concludes, however, that BR North's "objection," or request for modification, runs far afield from the issue presented and determined by Magistrate Judge Whalen in his Report and Recommendation. At bottom, BR North, through its objection, improperly seeks to have this Court modify the Report and Recommendation to address relief not requested in its original

11

motion and order the disgorgement of assets from companies that are not parties to this proceeding.

To the extent BR North objects to the Magistrate Judge's Report and Recommendation and seeks to have this Court declare that the transfer of the Digim stock was "void *ab initio*," the Report and Recommendation is not ambiguous and does not need to be modified for clarity. The Magistrate Judge held, and the Court agrees, that Glieberman never legally transferred "any shares of Digim to Digital Image, LLC, or to anyone else." (Report and Recommendation, at *7.) Further, the Magistrate Judge made clear that even if the transfer of Digital Image, LLC to Lontray was valid, then that transfer "did not include Digim." (*Id.*) The Magistrate Judge then properly concluded that the Court could order the transfer of the shares Digim to BR North under Mich. Comp. Laws § 600.6104(3) and (5) because they legally remain in Glieberman's possession. (*Id.*) In summary, the Court finds that the meaning and reasoning set forth in the Report and Recommendation is plain and thus BR North's request to clarify is rejected.

Further, the Court concludes that the Magistrate Judge's findings, to which no party to this proceeding objects, are legally sound and resolve the discrete issue before the Magistrate Judge: whether Glieberman legally transferred the Digim stock to Digital Image, LLC.[5] BR

---

[5] The Judgment Debtors agree with the Magistrate Judge's finding that Glieberman remains in possession of the Digim stock, as evidenced both by the withdrawal of their objection to the Report and Recommendation and Glieberman's Bankruptcy filings. Indeed, the Court takes judicial notice of the fact that on November 16, 2015, Glieberman set forth in his bankruptcy filings that he is "100% shareholder interest in Digim, Inc. f/k/a Digital Image, Inc. upon information and belief, corporation has been dissolved at this date" and "100% member of Digital Image, Inc. Owns 100% shareholder interest in Digim and assets of former company." *In re Glieberman*, Bankr. Case No. 15-55996, ECF No. 25, Schedule B at *6-7. Additionally, in an adversary proceeding against Lontray pending before the Bankruptcy Court, Gliberman asserted a position wholly opposite of the position that he took (for years) in this Court, providing that "Debtor, not the Trust, is and always has been the owner of one hundred (100%) of the stock of

North's objection, however, is an attempt to vastly expand the relief as initially requested in its motion to seize and transfer the Digim stock. In fact, BR North asks this Court to order the disgorgement or the clawback of assets far upstream from the single transaction examined during the evidentiary hearing and addressed in the Report and Recommendation. The Court finds that such a request is improper as it contemplates entities that are not part of this proceeding and also seeks relief that was not part of the original motion to seize and transfer. Accordingly, the Court declines BR North's invitation to modify the scope and relief of the Report and Recommendation where neither is necessary to effect the relief requested by BR North in its Motion to Seize Certain Stock. Accordingly, the Court will adopt the Magistrate Judge's Report and Recommendation and GRANT BR North's Motion to Seize and Transfer all Shares of Certain Stock Held by Debtor in Aid of Collection of Judgment and ORDER that Judgment Debtor Bernard Glieberman transfer all shares of stock in Digim, Inc. to BR North within fourteen (14) days of this order.

---

Digim, Inc. f/k/a Digital Image, Inc. Debtor's ownership continued through and included the filing date of the bankruptcy petition. At no time did Debtor *legally transfer* any shares of Digim, Inc. to Digital Image, LLC or any other party." (Adversary Case No. 15-05382, Complaint by Bernard Glieberman against Digital Image, LLC and Lontray Enterprises, LLC, ECF No. 53, at ¶¶ 38-40 (emphasis added)).

13

IV. CONCLUSION

For all these reasons, the Court denies BR North's Objection (ECF No. 344) and

ADOPTS the Magistrate Judge's Report and Recommendation (ECF No. 340).  The Court also

ORDERS Judgment Debtor Bernard Glieberman to transfer all shares of stock in Digim, Inc. to

BR North within fourteen (14) days of this Order.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:        DEC 2 2 2016